ANDREW S HANSEN (9819; *andrew@hansenip.org*)
**HANSENIP, LLC**
282 Maxine Circle, Bountiful, Utah 84010
Telephone: (801) 671-3621
Attorneys for Plaintiff WHITE KNUCKLE IP, LLC

DAVID A JONES (10134; *dave@white-knuckle.org*)
**WHITE KNUCKLE IP, LLC**
8 E Broadway, Salt Lake City, Utah
Company Counsel for Plaintiff WHITE KNUCKLE IP, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| WHITE KNUCKLE IP, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRONIC ARTS INC., a Delaware corporation,<br><br>Defendant. | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S SHORT FORM DISCOVERY MOTION TO SUPPLEMENT STANDARD PROTECTIVE ORDER AND PLAINTIFF'S CROSS-MOTION TO SUPPLEMENT STANDARD PROTECTIVE ORDER**<br><br>CASE NO.: 1:15-cv-00036-DN<br><br>Judge David Nuffer<br>Magistrate Judge Brooke C. Wells |

### INTRODUCTION

Plaintiff White Knuckle, IP (WK) opposes Defendant Electronic Arts's (EA) Motion To Supplement Standard Protective Order (DKT 32) WK cross-moves to seek an order of its own to Supplement the Standard Protective Order ("WK's Proposal") (Ex. A).

Plaintiff WK has alleged patent infringement of US 8,529,350 ("the '350 Patent) by EA's NCAA and PGA Tour Sports video games. The '350 patent relates generally to updating the

visual appearance of a sports field or stadium using a parameter downloaded from the Internet. The Parties agree that Defendant EA will need to disclose confidential information related to its software and that the Standard Protective Order should be amended to include a prosecution bar and restrictions on viewing highly confidential source code.

EA's motion in includes a proposed order ("EA's Proposal") that amends the Standard Protective Order ("SPO") in a manner unnecessary to protect its confidential information. EA seeks a protective order that will allow it to exclude WK's lead counsel from this litigation, obstruct basic discovery of the elements of the Accused Instrumentalities, and cause unnecessary costs and delay to this litigation.

EA has already demonstrated its propensity to use discovery issues as a tool for obstruction. For example, EA has refused to provide its Initial Disclosures to WK in violation of DUCivR 26-2. EA's tactics are a flagrant disregard for the Court's rules. EA's behavior is particularly troubling in light of the fact that during the scheduling conference held May 13, 2015, Magistrate Furse informed EA that "the way our rules are written now ... the inability to agree on an alternative protective order is not a basis to withhold discovery." (see court audio at 32:09 – 32:20). Despite Magistrate Furse's instruction and numerous requests by WK for Initial Disclosures, EA has not produced a single document required by LPR 2.2(b)(1) and WK is forced to make its initial infringement contentions without them.

In light of EA's propensity to obstruct discovery, Plaintiff WK moves the Court to deny EA's Motion to Supplement the SPO and cross-moves for an order of its own seeking to supplement the SPO. WK's Proposal uses provisions taken from the model protective order in the Northern District of California ("NDCa Model"), a copy of which is attached as Exhibit B.

The provisions of the NDCa Model are fair and balanced and avoid the need to vet terms for potential discovery abuses.

As will be shown, EA's motion should be denied because it is too expansive and lays a foundation for obstructing progress in this litigation.

## APPLICABLE LAW

While protective orders are not limited to patent cases, discovery matters that implicate issues of substantive patent law are governed by Federal Circuit law. *In re Deutsche Bank Trust Co. Am.*, 605 F.3d 1373, 1377-78 (Fed Cir. 2010). Thus, Fed Circuit law governs EA's amendments to the Standard Protective Order. Under *Deutsche Bank*, the party seeking the protective order bears the burden of demonstrating "good cause" for its issuance. *Id.* at 1378 (citing Fed.R.Civ. P. 26(c)). The scope of the activity prohibited must balance the conflicting interests of the parties. For example, with regard to a prosecution bar, the moving party must show "good cause" that "the scope of activities prohibited by the bar… and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of the proprietary competitive information." *Id.* at 1381.

To make a determination under *Deutsche Bank* the court must examine counsel's competitive decisionmaking. Competitive decisionmaking is "a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." U.S. Steel Corp. v United States, 730 F.2d 1465, 1468 n. 3 (Fed. Cir. 194).

## ARGUMENT

I.  **Defendants have not shown "good cause" for attempting to exclude WK's lead counsel from participating in this litigation.**

3

### A. Defendant's assertion that lead counsel should be excluded from receiving AEO documents because of previous prosecution activities rings hollow in light of the prosecution bar.

Paragraph 6(a)(1) of EA's Proposal includes a footnote 1 that defines "outside counsel" to mean "counsel … that is not a principal … of the party." The purpose of this new definition is to prevent WK's lead counsel, Andrew Hansen, from viewing EA's confidential information. EA is well aware that Andrew Hansen has an ownership interest in WK and EA is using the definition of "outside counsel" to effectively exclude him from participating in this litigation.

EA has not and cannot establish a valid reason why lead counsel's activities pose an unacceptable risk to EA's confidential information. The only competitive decision making activity performed by lead counsel has been patent prosecution. Concerns over patent prosecution are ameliorated by the prosecution bar. More importantly, WK and its parent company do not engage in activities that are competitive with EA. WK does not make video games and has no employees engaged in traditional competitive activities like engineering, marketing, or sales. Andrew Hansen's activities for WK have been to serve as lead counsel in the litigation, which is hardly a justification for excluding him from viewing AEO documents. WK's parent company, White Knuckle Gaming LLC, is likewise a non-practicing entity whose only activities have been to prosecute the parent application of the '350 patent and its related applications. Neither company participated in the invention of the '350 patent. The risk of Andrew Hansen using confidential information in a competitive decision making process is minimal in view of the prosecution bar. Consequently, EA cannot show "good cause" to justify its attempts to exclude WK's lead counsel through the footnote in paragraph 6(a)(1).

II.     **Defendants have not shown "good cause" for the scope of its proposed protective order.**

    A.      **Defendant's Proposal to use the '350 Patent's USPTO classification to define the scope of the prosecution bar yields bizarre results that are overly broad and divorced from the substance of this this litigation.**

To define the scope of the prosecution bar, EA identified words from the classification of the '350 patent and proposed the adoption of broad language. (DKT-32). EA's Proposal covers, "amusement/gaming systems, related networks, and amusement/game software." (DKT-32-2, ¶ 7(g)). This scope goes well beyond the scope necessary to protect EA's confidential information. Indeed, EA's proposed subject matter exceeds the scope of the patent, the scope of the litigation, and even the scope of EA's business. For example, the term "amusement systems" is so broad as to cover roller coasters. The term "related networks" can be construed to mean anything related to the Internet. It is WK's understanding that EA does not sell roller coaster equipment and that even though EA sells video games that use the Internet, EA does not sell networking products per se. And even if EA is or were in these business, that alone would not be justification for such a broad scope. The purpose of the prosecution bar is to protect EA's confidential information disclosed in the litigation. EA does not have a legitimate interest in barring WK's lawyers and experts from performing services in entire fields of endeavors and it certainly can't justify a bar that extends beyond the scope of its business activities. EA's scope is merely punitive to the lawyers and experts representing WK.

A proper analysis for the scope of the protective order should begin with a review of the disclosed subject matter of the patent application and the accused products. The '350 patent relates to updating the visual appearance of the field or stadium of a sports video. The update is

based on a real life attribute of a real life field or stadium and the update is transmitted over the Internet. The accused products are football and golf video games that have their visual appearance updated over the Internet.

WK proposes a prosecution bar on technology related to "updating the visual appearance of sports video games over a network." (Ex. A, ¶ 7(g)). This language is broader than the actual patent and accused products, but is sufficiently narrow to minimize the subject matter that is covered but not likely to be disclosed in this litigation.

To ensure adequate protection for EA's information, WK has also proposed adopting the stringent model language from the NDCa Model, which says, "including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action." (Ex. B, ¶ 2.9). WK's proposed scope for the subject matter strikes a more than fair balance between its own interests and that of EA.

**B.     Defendants have not shown "good cause" for a prosecution bar that prohibits WK's litigation counsel from participating in Inter Partes Review Proceedings**

The parties are in a dispute over the post grant review proceedings that the prosecution bar will prohibit. WK has compromised on its desire to engage in appeals and reexaminations. WK proposes adopting the prosecution bar from the NDCa Model, which prohibits participating in appeals and reexaminations. (Ex. B, ¶ 8). However, the NDCa is silent with regard to Inter Partes Review ("IPR"). EA insists that the prosecution bar encompass IPR proceedings.

IPRs are a relatively new proceeding established by the America Invents Act. Unlike previous post grant proceedings at the USPTO, IPRs are a trial proceeding. See *Google Inc. v. Jongerious Panoramic Techs., LLC* (Case IPR2013-00191), Paper No. 50 at 4 (P.T.A.B. Feb. 13,

2014 (holding "[a]n *inter partes* review is neither a patent examination nor a patent reexamination."); and see http://www.uspto.gov/patents-application-process/appealing-patent-decisions/trials/inter-partes-review (USPTO website stating "Inter partes review is a trial proceeding").

IPRs are increasingly being used by accused patent infringers to move invalidity proceedings from a district court to the USPTO for adjudication. While IPR is a trial, it does provide very limited opportunity to amend the claims. For example, out of the first 3000 IPRs, only four patentees succeeded in amending the claims (i.e., 0.13%). (DKT-32-3). Nevertheless, an argument can be made that even a remote chance still provides a chance. This argument was unsuccefully made in *Endo Pharmaceuticals Inc. v. Amneal Pharms Inc., et al.*, No. 1:12-cv-08115-TPG-GWG (S.D.N.Y. Aug. 13, 2014). The court in *Endo Pharmaceuticals* applied the *Deutsche Bank* test and held "the potential injury to Amneal is minimal" and "the potential injury to Endo, if [litigation counsel] is barred from participating, is high" because "Endo would be at a significant disadvantage if [litigation counsel] is not permitted to assist in the defense of Endo's patents against the same prior art raised in this litigation." *Id.* Slip Op. at 10.

In contrast EA seeks a rigid bar to WK litigation counsel from participating in IPRs (DKT-32-4 ¶7(g)). EA's approach gives no thought to the onerous consequences of forcing WK to obtain new trial counsel. Under EA's proposal, WK's existing litigation counsel wouldn't even be able to advise the new trial counsel. This approach is highly prejudicial to WK.

In contrast, WK proposes a compromise that resolves the issue with motions to amend claims in IPR proceedings. WK proposes extending the prosecution bar to motions for amendments to claims in IPRs while allowing litigation counsel to participate in all other IPR proceedings. (Ex. A, ¶ 7(g)). A similar compromise was instituted in *Paice LLC v Hyundai*

7

*Motor Co.*, 2014 WL 3773666 (D. Md. July 29, 2014). In *Hyundai* the court allowed litigation counsel to participate in an IPR, "so long as Plaintiffs' litigation counsel (experts, consultants, etc.) do not cross the line and participate, in any way, in revising or amending challenged claims." *Id.* at 11.

WK's Proposal adopts the language from the Hyundai court and incorporates it into the NDCa Model. (Ex. B, ¶ 8). The NDCa Model provides a fair and balanced approach to the prosecution bar and the provisions set forth in Hyundai provide a fair compromise for addressing the issues raised by the new IPR proceedings.

III. **Defendants have not shown "good cause" for the majority of the amendments in its Proposal and has failed to meet its burden to provide good cause**

    A. **EA erred by attempting to shift to WK its (EA's) burden to show good cause.**

While WK agrees the SPO should be amended, EA's Proposal includes numerous independent substantive changes for which it has made no showing of "good cause." EA met and conferred with WK about the proposed changes, but refused to discuss the necessity of the vast majority of the changes. Instead EA insisted that WK provide a reason not to include the changes. This approach is improper because it attempts to relieve EA of its initial burden as set forth in *Duetsche Bank*. (605 F.3d 1373, 1378 (Fed Cir. 2010)). So unless EA meets its burden, the Court should not enter EA's proposed order.

    B. **EA's proposal provides an improper definition of "Restricted Confidential - Source Code" that could be used to obstruct discovery**

Paragraph 2(c) of EA's Proposed Protective Order allegedly defines "Restricted Confidential - Source Code". However, instead of defining source code it simply expands the definition of "Protected Information" to be anything that "includes source code and/or live data." This definition is unclear because it doesn't actually define source code. Even more troubling is

8

that it doesn't place any restrictions on the sensitivity of the information.  Under EA's definition, any documents that include any amount of source code regardless of its sensitivity would subject the document to the onerous restrictions afforded "Restricted Confidential - Source Code". In contrast, the NDCa Model provides a clear definition of "source code" and requires that the information be "extremely sensitive" and that disclosure of it would "create a substantial risk of serious harm that could not be avoided by less restrictive means." (Ex. B, ¶ 2.9)  WK proposes this Court adopt the definition used in the NDCa Model.  The language from this model is fair and necessary to avoid providing EA with opportunities to further obstruct discovery.

      **C.     EA's proposal for "Restricted Confidential - Source Code" provides opportunities to obstruct discovery**

Paragraph 5(c) of EA's proposed protective order sets forth numerous requirements for viewing source code.  The proposed terms are unduly complicated and fraught with potential for discovery abuses. First of all, as mentioned, WK is a non-practicing entity.  It does not make video games and has no employees engaged in traditional competitive activities like engineering, marketing, or sales.  EA's onerous requirements for viewing source code are not appropriate in this case.  This case is not an "Apple v. Samsung" and the complex restrictions for viewing source code are not necessary.  More importantly, the language is unclear.  For instance, paragraph 5(c)(1) requires the Receiving Party to provide the software tools for viewing the source code. The tools must be provided on a CD or DVD and they can't be used to compile the software.  This language begs the question as to whether WK can install software tools that include a compiler, even if the compiler isn't used? This is a legitimate issue because most tools used to view software are also used to compile the software. WK proposes using the standard language from the model order in the Northern District of California. ." (Ex. B, ¶ 9).  The

language proposed by the Northern District of California is fair and balanced and provides EA with the protection it needs.

## CROSS MOTION

WK cross moves for entry of its Proposal (Ex. A). For the Court's convenience, WK includes a markup version of WK's Proposal showing the changes between it and EA's Proposal.

WK restates its arguments above regarding the reasonableness of its amendments to the SOP. As discussed above WK is a non-practicing entity that does not compete with EA in the market place. Although WK's lead counsel Andrew Hansen has participated in related patent prosecution matters, the Proposal includes a prosecution bar that will prevent those viewing confidential information from engaging in competitive decision making with that information. The prosecution bar and lack of competitive activities on the part of Plaintiff and its parent company demonstrate the minimal risk imposed by disclosing AEO documents to WK's counsel. Moreover, by extending the prosecution bar to motions for amendments to claims in IPRs, the prosecution ban may be restricted with respect to other IPR proceedings while still maintaining the integrity of EA's confidential information.

## CONCLUSION

EA's has not and cannot shown good cause for the changes it seeks to make to the SOP. In contrast, WK has proposed amendments to the SOP that are based on model language and case law. Therefore, WK moves to deny EA's Short Form Discovery Motion to Supplement Standard Protective Order and instead moves the Court to enter Plaintiff's Supplement To the Standard Protective Order.

DATED this 3rd day of June, 2015.

>Respectfully Submitted,
>
>*/s/ Andrew S. Hansen*
>ANDREW S. HANSEN
>**HANSENIP, LLC**
>Attorneys for Plaintiff  WHITE KNUCKLE IP

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S SHORT FORM DISCOVERY MOTION TO SUPPLEMENT STANDARD PROTECTIVE ORDER AND PLAINTIFF'S CROSS-MOTION TO SUPPLEMENT STANDARD PROTECTIVE ORDER was served upon Defendant via e-mail on June 3, 2015 to its attorneys of record as follows:

    H. Dickson Burton *(hdburton@traskbritt.com)*
    Karineh Khachatourian *(karinehk@duanemorris.com)*
    Patrick S. Salceda *(psalceda@duanemorris.com)*
    Daniel T. McCloskey *(dtmccloskey@duanemorris.com)*
    Christopher J. Tyson *(cjtyson@duanemorris.com)*
    David T. Xue *(dtxue@duanemorris.com)*

                                                 */s/ Andrew S. Hansen*
                                                 Andrew S. Hansen
                                                 **HANSENIP, LLC**
                                                 Attorneys for Plaintiff WHITE KNUCKLE IP